Donald Hester v. Jason Kelly County District Attorney Good afternoon. My name is Ronald Hester. Obviously, you guys know I'm not a lawyer. I've been representing myself for some time with this matter. Originally, I was just contesting the warrant, and then I wound up contesting the search, and this has been going on for seven years now. I'll start off with the defendant's brief. In the defendant's brief, they contended that the search was legal, that they had reasonable suspicion to conduct the search. They contended that everything was perfect with this arrest. There was a trial. I was in the trial myself. I took the stand. There was an issue where the officers made a statement and said, hey, this guy told me he had it. That was a way to establish reasonable suspicion because there was no other reasonable suspicion from the beginning. The chain of events went like this. The officers kick in the door. They wave their weapons. They say, take off your clothes and bend over. Let me look up your anus. In a nutshell, one, two, three, after I'm cuffed and on the floor, the house is secure from threats, things of that nature. Basically, what I'm saying is there was never any articulable, reasonable suspicion to the individual. Like, hey, I saw him reaching. I saw him twitching or holding his buttcheek. He was nothing. There was nothing that existed to say, hey, I think he has something in his anus. The place was secure. There was no threats. There was no way that I or any other arrestee would have been able to reach any other items. Well, Mr. Hester, the jury decided, it seems to me, that there was reasonable suspicion because they were instructed about that issue and they heard argument from both sides and they heard your testimony and they heard the officer's testimony. But what I'm interested in is I believe that your original complaint in the case incorporated an argument that the search was conducted in an unreasonable manner. You focused on the Albany Police Department procedures as a violation, but am I right that you were arguing from the beginning, among other things, that even if a strip search or even a cavity search might have been permissible in the abstract, that the way in which it was conducted was unreasonable because it was conducted in the presence of a large number of people unnecessarily?  That is an argument that you made in your complaint. Yes. And in my brief, I made that argument. And just to go a little further, here it is. You have that element and then you have the judge give her jury instructions to a question. I'm going to get to that now. Because we were always trying to ascertain whether the search was reasonable in the first place. Whether they had the right to search me and conduct that sort of search is irrelevant. All we want to know is whether the search was reasonable. And guess what? That's exactly what the jury asked. They didn't want to know anything else. They wanted to know if seven officers are here, there's supposed to be two per the policy, the policy aligns with the Constitution, what's the problem here? There's obviously reasonables in this problem. Let me ask the question. So this is the judge's response. She doesn't give them the response to the reasonables. She doesn't. What she does, she gives them the whole instruction. Okay? She doesn't answer the question per se, because that would have been too much in my favor, in favor of the plaintiff. They're asking a question that's in favor of the plaintiff. If she answers this question straight up, that's a W for me, automatically, because they're going to go back and they're going to say this search was unreasonable. There were more than two officers. They did it inside of a residence. This is my statement. In the presence of other people who were being arrested. Yes. Three, two other arrestees. My thing is this, and I'm just going to speak in commentary, no law, no nothing. This is America. The officers don't have the right to kick down a door in a residence and tell everyone, take off your clothes, bend over, I want to look in your anus. They don't have the right to do it, unless those factors are present. They don't have them here. You know how they clean it up? He told me he had it. This is seven years later. This work that I've done is not premised on a lie. Oh, I didn't have it. He said I had it, and I'm saying I didn't have it. No. They're trying to get to the bottom of an unreasonable search. I don't want this happening to that community. I don't want those kids sitting in their friend's house. They kick the door in and his grandmother is subject to a cavity search because she's there. That's what happened to me. Now we have the officers testify. Their testimony outlines the reason why they should not conduct this sort of search on me. Here it is. They testify. He's only there for 45 seconds in the residence. We watched him enter. Soon as we enter, we detain him immediately. He's the first person we see in the kitchen. Now, the kitchen is separated by a partition. So you have the kitchen here and then you have the living room. There, one of the other reasons was I was the closest to a weapon. Can I put a weapon in my anus? So it was just a chain of events that I'm trying to establish the probable cause. Now, the warrant. Let's get to that. The warrant has a DSS form attached to it. The DSS form says Brian Hardin lives on floor number one. The judge and the district attorney got together in my pre-trial hearing and said, hey, no, the first floor is actually on the second floor. So how come Mr. Kelly didn't relay that when he was applying for this warrant with this document? Your Honor, I know the document says the first floor, but it's actually on the second level because the first floor is the storefront. He couldn't tell that judge that because it was a lock. He had the C.I. to tell him where exactly where his target was. He had a C.I. working with him, but he wanted access to the whole building. Thus, the language of the warrant, the curtilage, the basement, the attic. This man only lives in one apartment. How can you cover this whole space with this one warrant? There's two units in this building. No. Judge McDonough and the D.A., they got together. And it's in the minutes where they shut my lawyer down when he's making his argument to say, hey, the document's right here. When he applied, this is called probable cause. The federal went to the criminal case where you were. Yes. They didn't allow this into the civil case because they said the warrant was already ruled to be sufficient. I see. And in all reality, that warrant was never sufficient. And here's another piece of evidence. Brian Harden is now incarcerated six and a half years later for this indictment. Brian Harden is not charged with anything that returned from that warrant. You know what he's charged for? The elements that got the warrant. The two criminal cells of narcotics. The drugs, the gun, everything else they found in his home. He's not charged with it. Right now, he's sitting in Albany County Jail. And he's not charged with it. So how valid is this warrant? How? You return all these drugs and guns, but the warrant is no valid. On top of that, this is my last piece. You arrest all of us. The three of us in the home, four of us out the home, down the block, four blocks away, four individuals. They not only locked them up, they charged them with everything they found in their home. There were so many things wrong that day. And it took me all this time to actually have the opportunity just to say it. This is what took place. They never would let me do it there. She protected them in the district court. When she directed that jury of reasonable suspicion and not the reasonableness of the search, she gave them favor. In her instructions, you will see a lot of reasonable suspicion language. Very little reasonableness language. We offered instructions. She could have gave them. She could have imparted them in her instructions to the answer to this question. She did none of it. It was one-sided. And it's in the paperwork. You can read it plain as day. I'm not a lawyer, and I've read her instructions, and I said this is not 50-50. This is 75-25. It's in black and white. Mr. Hester, I think we have your position. So we appreciate you coming here and making your argument today. Yes. Thanks for having me. And we will consider your arguments in your papers and ultimately issue a decision on this. But thank you for coming. And that is concluding our hearing for today. Okay. Before I leave, I just need to ask one question. What does on submission mean? Oh, it means the other side has decided not to come and argue today. So they're comfortable with the brief that they filed? Yes, they are. That's exactly what it means. Okay. Thank you. All right. I'm comfortable as well. You guys have a nice day, and thanks for having me. Yes. Thank you. Well, Arden.